UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:14-CV-96-GNS

AEP INDUSTRIES, INC.                                                      PLAINTIFF

v.

UTECO NORTH AMERICA, INC., SUMMIT                          DEFENDANTS
RIGGING, INC., and RPM TRANSPORT, INC.

v.

COUGAR ESCORTE ROUTIERE, INC.                 THIRD-PARTY DEFENDANT


**MEMORANDUM OPINION AND ORDER**

Defendant RPM Transport, Inc. ("RPM") filed Motions to Dismiss for *Forum Non Conveniens* or, in the Alternative, to Stay Litigation. (DN 25, 26). Third-Party Defendant Cougar Escorte Routiere, Inc. ("Cougar") filed a similar motion to dismiss the third-party claims. (DN 33). All motions are ripe for adjudication. All three motions (DN 25, 26, 33) are **DENIED**, both with respect to dismissal for *forum non conveniens* and abstention or stay under the *Colorado River* doctrine.

I.       **SUMMARY OF FACTS AND CLAIMS**

This Court has diversity jurisdiction under 28 U.S.C. § 1332. Plaintiff AEP Industries, Inc. ("AEP"), a Delaware corporation with a principal place of business in New Jersey, brings negligence and breach of contract claims against UTECO North America, Inc. ("UTECO"), Summit Rigging, Inc. ("Summit"), and RPM Transport, Inc. ("RPM"). UTECO and Summit are Georgia citizens, while RPM is a Canadian citizen. Additionally, UTECO asserts a third-party claim against Cougar, a Canadian citizen.

1

AEP owns a factory in Bowling Green, Kentucky. In 2012, it purchased a film printing press to aid its manufacture of packaging material. It contracted with UTECO for the sale, delivery, and installation of this equipment for its Kentucky facility. UTECO then subcontracted with Summit to deliver the equipment from Montréal, Québec. Summit subcontracted RPM, a transportation provider, who hired Cougar to provide highway escort services as RPM transported the unusually-sized load to Kentucky.

While in transit to Kentucky, the large load struck a highway overpass in Ottawa, Ontario, causing substantial damage to the printing press. AEP alleges that this resulted in a significant interruption of its business activities. AEP received separate compensation for its losses from two different insurers. On June 2, 2014, the insurer of the equipment filed a subrogation claim in AEP's name against the current defendants and others in the Ontario Superior Court of Justice. That lawsuit is still pending.

AEP filed the present lawsuit on September 24, 2014, seeking to recoup its $500,000 deductible under the business interruption insurance policy the other insurer provided. RPM then moved to dismiss the primary and cross claims based upon the doctrine of *forum non conveniens*. (DN 25, 26). Cougar also moved to dismiss the Third-Party Complaint. (DN 33).

## II.   DISCUSSION

RPM seeks relief under two legal doctrines that allow a federal court to abstain or temper the exercise of its jurisdiction. First, the doctrine of *forum non conveniens* allows courts to "resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507 (1947). "[T]he central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient[.]" *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981). Second, and alternatively, RPM asks the Court to restrain its

exercise of jurisdiction under the doctrine announced in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). The *Colorado River* doctrine allows courts to abstain or postpone exercise of jurisdiction in favor of ongoing proceedings elsewhere to conserve judicial resources.

### A. *Forum Non Conveniens*

To determine whether dismissal based upon *forum non conveniens* is appropriate, the Court must apply a two-step analysis. First, the defendant must establish that an appropriate alternative forum is available. Second, the balance of public and private interest factors must demonstrate an unnecessary hardship on the defendants. *Zions First Nat'l Bank v. Moto Diesel Mexicana, S.A. de C.V.*, 629 F.3d 520, 523 (6th Cir. 2010). If these factors indicate that "oppression and vexation to a defendant [is] 'out of all proportion to plaintiff's convenience[,]'" dismissal is appropriate. *Zions First Nat'l Bank*, 629 F.3d at 525 (citing *Koster v. Am. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)). Notably, a U.S. plaintiff's choice of forum is given heightened deference. *Duha v. Agrium, Inc.*, 448 F.3d 867, 874 (6th Cir. 2006).

Private factors are unique to the parties and dispute. These include the " relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil Corp.*, 330 U.S. at 508. Private factors must weigh heavily in the defendant's favor to warrant dismissal. *Id.* at 508.

Public interests are those particular to the forum. If the dispute's "origin" is outside the forum, these factors generally weigh against the exercise of jurisdiction. In particular, juries from jurisdictions without a connection to the dispute should not be burdened. *Id.* at 509. Conversely,

the citizens of a jurisdiction, through their participation in a jury pool, have an interest in deciding local controversies. *Id.* Finally, the application of foreign law unfamiliar to a court creates a burden which weighs against the exercise of jurisdiction. *Id.*

### 1.    *Negligence Claims*

AEP's negligence claims against UTECO, Summit, and RPM arise from the accident in Canada. AEP claims Defendants owed a duty to safely transport the subject equipment and breached that duty when the printing press was damaged. (Compl. ¶¶ 27-28, DN 1). Defendants' answers do not dispute this duty.

Before weighing the public and private factors, the Court must first determine that a suitable alternative forum exists. *Wong v. Partygaming Ltd.*, 589 F.3d 821, 830 (6th Cir. 2009). No party contests Canada's suitability as a forum, and the Court has little trouble concluding Canada would provide an amenable alternative.[1] Absent an obviously deficient forum, an alternative is generally deemed suitable if the parties are amenable to process there. *Wong*, 589 F.3d at 830. As all parties in this suit are at least nominally involved in the subrogation suit pending in Ontario, process provides no obstacle to the alternative forum.

AEP's complaint asserts Defendants "committed negligence by, among other things, damaging the Printing Press in the Accident." (Compl. ¶ 28, DN 1). As the accident occurred in Canada, outside this jurisdiction, public interest could weigh in favor of dismissal. The citizens of this jurisdiction should arguably not be burdened with determining liability for an accident in Canada. AEP does allege, however, that Defendants' negligence caused an interruption to its

---

[1] Some forums offering only "clearly unsatisfactory" remedies may be deemed inadequate alternatives. *Piper Aircraft*, 454 U.S. at 255 n.22. None of the parties contends Canada is such a forum. The Sixth Circuit and other courts in the Western District of Kentucky have consistently found Canada to be a suitable alternative. *See, e.g.*, *Stewart v. Dow Chem. Co.*, 865 F.2d 103 (6th Cir. 1989); *Holley Performance Prods., Inc. v. Tucows, Inc.*, No. 1:10-CV-180, 2011 WL 1376623 (W.D. Ky. Apr. 12, 2011).

business in Kentucky. Thus, any discontinuity to AEP's Kentucky operations would have an effect on the citizens of this jurisdiction, notwithstanding Canadian citizens' interest in a local accident. For the negligence claim, this factor appears to be a wash.

RPM argues the application of foreign tort law is a public interest factor weighing in favor of dismissal. The application of foreign law, however, may not be an issue. Federal courts sitting in diversity apply the choice-of-law rules of their forum. *NILAC Int'l Mktg. Grp. v. Ameritech Servs., Inc.*, 362 F.3d 354, 358 (6th Cir. 2004). For tort claims, "if there are significant contacts—not necessarily the most significant contacts—with Kentucky, the Kentucky law should be applied." *Foster v. Leggett*, 484 S.W.2d 827, 829 (Ky. 1972). While the parties have not fully briefed the choice-of-law question, this factor does not clearly weigh against this Court's exercise of jurisdiction because there is a colorable argument for applying Kentucky tort law.

Despite three of the five parties being U.S. citizens, RPM argues that private interests also weigh in favor of dismissal. RPM emphasizes that proof of tort liability for an accident taking place in Canada will be primarily located in Canada, though AEP asserts that much of this proof may be documentary in nature and easily transferable to this jurisdiction. AEP further argues that proof of its business interruption damages is not as easily transferable and would be primarily located in Kentucky. Damages evidence would likely be most conveniently offered in Kentucky, while liability evidence most conveniently offered in Canada. The question then becomes whether damages proof or liability proof is likely to prove more voluminous and burdensome.

The Court concludes access to sources of proof favors a Kentucky forum. At this early stage of the litigation, it appears that the witnesses and documents needed to prove liability are

likely less numerous than those to prove business interruption damages. The factory and locale of the business interruption are located in Kentucky. Proof of damages would be expected to require testimony from managers about the equipment's intended use, any cost savings, and financial projections. To prove liability, the testimony of the drivers of the escort vehicle and truck as well as evidence to establish the legal requirements and responsibilities of Canadian commercial haulers would likely be required. While it is difficult to determine concretely the forum most convenient to sources of proof, evidence of damages seems likely more burdensome given the number of people involved in AEP's printing operations compared to those involved in the transport of the press. Because damages proof appears to be more accessible in Kentucky, Kentucky is the more convenient forum in which to offer proof.

Thus, public interest factors appear inconclusive while private interests favor a Kentucky forum. This Court need not finely balance the two to determine which has the greater weight. "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp.*, 330 U.S. at 508. Further, the "heightened deference" afforded a U.S. plaintiff's choice of forum has been deemed "determinative." *Duha*, 448 F.3d at 874. Given that there is no suggestion of forum-shopping or improper ulterior motives in Plaintiff's choice of forum, the motion to dismiss for *forum non conveniens* regarding the first-party negligence claims will be denied.[2]

---

[2] RPM argues AEP's forum choice should be given lessened deference because they have already commenced suit in Canada. This ignores the subrogated nature of the Canadian claim and AEP's minimal role in that lawsuit. The assignability of insurance claims and its consequences are well-recognized in U.S. law. Where parallel cases cannot be consolidated, "tortfeasors[] may have to defend two or more actions on the same tort . . . ." *United States v. Aetna Cas. & Sur. Co.*, 338 U.S. 366, 382 (1949). In this case, AEP's choice is not so oppressive or vexatious to warrant exception to the established rule especially given that all Defendants agreed to participate in the sale and delivery of the printing equipment to Kentucky.

As the third-party and cross claims of negligence are entirely derivative of the first-party claim, any minor differences would not ultimately alter this Court's analysis of the parties' convenience. In any event, at this stage of the litigation the third-party and cross negligence complaints contain no differing factual allegations to support distinctions. The motion to dismiss for *forum non conveniens* regarding those claims will also be denied.

### 2. *Breach of Contract Claims*

AEP's primary claim appears to be that the accident in Canada amounted to a breach of contract resulting in business interruption losses. While Defendants do not dispute the existence of contracts among the parties, they contest any contractual liability flowing from the accident. While liability findings related to the negligence claims may be relevant to outcome of this case, the ultimate resolution of this claim will most likely be determined under contract law. As such, the source of applicable contract law should supplement the analysis. As with the negligence claims, the suitability of the alternative Canadian forum does not appear to be an issue.

The private interests of the litigants in the contract claim are similar but weigh more heavily in favor of a Kentucky forum. Contractual proof should be located primarily within the United States, while liability proof may play a lessened role. [3] AEP argues most of the documentary support for this claim is located in Georgia (the location of Summit and UTECO), New Jersey (AEP's corporate headquarters), or Kentucky. RPM points to the Canadian evidence of liability but suggests no other evidence bearing on the contract claim located in Canada.

---

[3] Liability proof will be necessary for any apportionment and may thus may be more prominent in the cross and third-party claims. While AEP correctly points out apportionment is not its concern, it remains the Court's concern. Liability proof's lessened role in the contractual claim is thus partly theoretical and partly a recognition of the increased relative importance of documentary evidence.

Accordingly, proof of liability on the contract claim appears more accessible in a Kentucky forum.

The public interests of the forum are unchanged with the exception of the choice-of-law issue. Kentucky applies Section 188 of the Restatement (Second) of Conflict of Laws (1971) to resolve choice-of-law questions in contract disputes. *Saleba v. Schrand*, 300 S.W.3d 177, 181 (Ky. 2009). In the absence of a forum selection clause, the Restatement advises courts to apply the law of the state that "has the most significant relationship to the transaction and the parties." Restatement (Second) of Conflict of Laws § 188 (1971). When a contract is for the rendition of services, it is governed by the laws of the state where the services are to be rendered. Restatement (Second) of Conflict of Laws § 196 (1971). By contrast, a contract for the transportation of goods is governed by the laws of the state from which the goods are dispatched. Restatement (Second) of Conflict of Laws § 197 (1971). For both service contracts and transportation contracts, these general rules apply "unless, with respect to the particular issue, some other state has a more significant relationship." *Id.* The Restatement provision applied by Kentucky courts thus creates presumptions that may be overcome in situations where one state has a more significant relationship than the state which the general rule would otherwise dictate.

The main contract at issue involved the sale and installation of the film printing press in the Bowling Green factory. There were two subcontracts that were apparently involved in transportation only. RPM argues Canada has the most significant relationship to the transaction, emphasizing the damage to the press and the collision occurred in Canada and assuming the "transaction" at issue is the collision. In fact, the primary "transaction" is the sale and installation of the equipment. Characterized in this manner, Canada's relationship to the transaction is less

significant. While transportation of the equipment was to have occurred in both Canada and the U.S., installation was to take place in Kentucky.

The choice-of-law question, however, does not weigh in favor of dismissal. The Restatement lists other factors that may displace the presumption it creates. The parties have not fully briefed the choice-of-law question, and the Court's ruling here is not meant to determine the applicable law. The possibility of this Court applying Canadian law, however, is weighed against the possibility of a Canadian court applying likely equally unfamiliar Kentucky law. Thus, it is unclear both whether hearing this case would require this Court to apply foreign law or whether this Court's refusal of jurisdiction would avoid the issue. Nor have the parties pointed to any points of Canadian law that would dictate different results from those applied here. As with the negligence claims, this uncertainty leads the Court to conclude there is insufficient basis for this Court to abstain from exercising jurisdiction. Further, this Kentucky forum's interest in the contractual dispute is greater than its interest in the negligence claim. These considerations lead the Court to conclude the public interest factors weigh less heavily in favor of a Canadian forum regarding the contract claim. Considered in conjunction with private interests that already favor Kentucky, the Court will deny the motion to dismissal for *forum non conveniens* regarding the contract claims. Insofar as the third-party and cross claims implicate a contract dispute, they should be heard in a common forum.

### B. *Colorado River* Doctrine

RPM argues that as an alternative to dismissal for *forum non conveniens*, this case should be stayed under the *Colorado River* doctrine.[4] While *Colorado River* concerned parallel federal

---

[4] This Court has analyzed abstention and stay identically and simultaneously because "a stay is as much a refusal to exercise federal jurisdiction as a dismissal." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983). In *Moses H. Cone Memorial Hospital*, the U.S.

and state cases, it has been construed to apply similarly to parallel federal and international proceedings. *See, e.g. Holley Performance Prods., Inc*, 2011 WL at *1 (citing other examples). The doctrine's primary consideration is judicial economy. The Sixth Circuit explains "despite the 'virtually unflagging obligation of the federal courts to exercise the jurisdiction given them,' considerations of judicial economy and federal-state comity may justify abstention in situations involving the contemporaneous exercise of jurisdiction by state and federal courts." *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998) (citing *Colorado River*, 424 U.S. at 817). This doctrine is based upon considerations of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River*, 424 U.S. at 817. "Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . .'" *Id.* (citing *McClellan v. Carland*, 217 U.S. 268, 282 (1910)).

A two-step analysis is required to determine whether abstention is appropriate. First, the Court must determine whether the two proceedings are parallel. *Romine*, 160 F.3d at 339. Second, if found to be parallel, the Court should consider factors explicated in *Colorado River* and its progeny to determine whether abstention is warranted. *Id*. Unlike a *forum non conveniens* analysis, the parallelism requirement of *Colorado River* necessarily requires courts to consider cases as a whole, rather than claim-by-claim.

This Court concludes the instant lawsuit and the Canadian lawsuit are not parallel. Parallelism is not a formulaic requirement. "[E]xact parallelism" is not required; rather, "[i]t is enough if the two proceedings are substantially similar." *Romine*, 160 F.3d at 339 (citing *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989). "Generally, parallel proceedings involve the

_____

Supreme Court explicitly did not decide whether stays were analyzed under a lesser standard than dismissals, nor has AEP argued for a lessened standard.

same plaintiff against the same defendant, although the presence of additional parties in one suit but not the other will not necessarily destroy parallelism."[5] *Total Renal Care, Inc. v. Childers Oil Co.*, 743 F. Supp. 2d 609, 614 (E.D. Ky. 2010) (emphasis in original).

In diversity actions, where the plaintiffs in a federal suit parallel the plaintiffs in another proceeding, the identity of claims between the suits should be a nonissue. The plaintiffs in both suits have identical interests and an identical legal framework in which to achieve them. In federal-question actions, a finding that additional federal claims unavailable in a state forum are present can support a finding that parallelism is lacking. *See, e.g.*, *Kopacz v. Hopkinsville Surface & Storm Water Util.*, 714 F. Supp. 2d 682, 687 (W.D. Ky. 2010) (finding cases not parallel where additional claim asserted under federal law). Even in diversity cases, the assertion of additional state claims in a federal suit has served as a basis that two suits were not parallel. *See PNC Bank, Nat. Ass'n v. Person*, No. 06-292-C, 2007 WL 1423744, at *3 (W.D. Ky. 2007) (no parallelism found where additional claims had been asserted in federal forum). At least one court has used differing damages claims in finding cases not parallel. *See Total Renal Care, Inc.*, 743 F. Supp. 2d at 614 (cases not parallel despite common event and negligence claims, in part, because damages differed). Outside exact parallelism, this Court has found no steadfast rules to guide its determination regarding parallel proceedings. "There is no clear test for deciding whether two cases contain substantially similar parties and issues." *Acosta v. James A. Gustino, P.A.*, 478 F. App'x 620, 622 (11th Cir. 2012). Nonetheless, other district courts have considered

---

[5] In finding an exception to this general rule, the Sixth Circuit has found plaintiffs in two class actions supported parallelism because the interests of the named plaintiffs and the classes they represented were "congruent, notwithstanding the nonidentity of the named parties." *Romine*, 160 F.3d at 340. The *Romine* court was careful to place its holding within the context presented, a class action suit, and may not necessarily be taken as equating identity of interests with parallel parties (or, as may be present here, the reverse). Nonetheless, that Court's emphasis on the principles underlying parallelism, rather than a formulaic and formalistic comparison of the named parties, is clear.

factors such as the similarity of material facts alleged, parties, causes of action, and theories of recovery.

While the causes of action alleged in this suit (negligence and breach of contract) and facts giving rise to them are identical to those in the Canadian lawsuit, the plaintiffs are dissimilar and the theories of recovery differ. First, the plaintiff in the Canadian lawsuit is not identical to Plaintiff here. Although AEP is named as Plaintiff in the Canadian action, the suit was brought by Indemnity Insurance Company of America ("IICA") as subrogee for recovery of monies IICA paid to AEP. (Oland Aff. ¶¶ 3, 6, DN 34-2). IICA then filed the Canadian subrogation suit, albeit in AEP's name. (Statement of Claim ¶ 1, DN 1-1). While AEP and IICA's interests may have been aligned prior to their settlement, AEP has already been paid for its insured loss and has no incentive to pursue that portion of any claim. IICA, in contrast, has no right to pursue in the Canadian action claims based on AEP's losses outside the property damage to which IICA is subrogated. In this context, this Court finds little reason that a claim AEP's insurance carrier is pursuing elsewhere should have a limiting effect in this Court, which would elevate form over substance. In *Romine*, the Sixth Circuit found two differently named parties identical for the purposes of abstention because their interests were identical. The reverse is true here. AEP and IICA's interests are neither identical nor even overlapping. Notwithstanding AEP's nominal appearance in both actions, this Court finds them not to be identical parties for purposes of abstention.

Further, AEP and IICA's differing interests derive from disparate theories of recovery and seek distinct elements of damages. To support the damages elements of its negligence and breach claims, IICA alleges in the Canadian lawsuit "loss and damage to the cargo . . . of $273,717.56." (Compl. ¶¶ 23-26, DN 25-1). By contrast, in the present action, AEP claims the

$500,000 deductible on its interruption insurance policy for which it has not been compensated. (Compl., DN 1). Despite the similarity of factual nuclei, the two lawsuits allege harm resulting in two distinctly different ways. This weighs against a finding of parallelism.

Despite the common facts and causes of action in the two suits, differing plaintiffs and theories of recovery lead this Court to conclude the actions are not parallel. "The critical question is whether there is a 'substantial likelihood that the state litigation will dispose of all claims presented in the federal case.'" *Seyi-Am., Inc. v. Stamtec, Inc.*, No. 3-13-0461, 2013 WL 6096794, at *3 (M.D. Tenn. Nov. 20, 2013) (citing *Huon v. Johnson & Bell, Ltd.,* 657 F.3d 641, 646 (7th Cir.2011)). This Court is not confident the Canadian lawsuit as currently postured provides a vehicle to do so.[6] While recognizing that the parties and issues presented are related, they are not substantially similar and therefore are not parallel. This precludes any possibility of a *Colorado River* abstention or stay.

The balance of the *Colorado River* factors does not clearly favor this Court abstaining or postponing jurisdiction. Given the determination that the lawsuits are not parallel, however, it is not necessary to burden this decision with additional discussion of the other pertinent *Colorado River* factors. Accordingly, even were this lawsuit and the Canadian lawsuit parallel, the exceptional circumstances required to abstain or stay under *Colorado River* are not present. For these reasons, the motion will be denied with respect to stay under the *Colorado River* doctrine.

### III.    CONCLUSION

The doctrines of *forum non conveniens* and *Colorado River* abstention are both rare exceptions to the general obligation of federal courts to exercise jurisdiction. *Forums non conveniens* is unavailable because the *Gulf Port Oil* factors do not so clearly point towards

---

[6] This is especially true if IICA's Canadian solicitor's affidavit proves accurate and that suit's settlement awaits mere signatures. (Oland Aff. ¶ 7, DN 34-2).

Canada as an alternative forum so as to overcome the heightened deference afforded a U.S. plaintiff's choice of forum. The considerations for *Colorado River* abstention have not been clearly shown. "If there is any substantial doubt that the parallel litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties, it would be a serious abuse of discretion for the district court to stay or dismiss a case in deference to the parallel litigation." *Chellman-Shelton v. Glenn*, 197 F. App'x 392, 394 (6th Cir. 2006) (citation omitted). Because this Court harbors such doubts, a stay under *Colorado River* is also inappropriate. The Motion to Dismiss or, in the alternative, Stay Litigation (DN 25) is **DENIED**. For the same reasons, the Motions to Dismiss the Cross and Third-Party claims (DN 26, 33) are **DENIED**.

It is so ordered.

**Greg N. Stivers, Judge**
**United States District Court**

March 23, 2015

cc:     counsel of record

14